WILLIS H. WHITE, *Trustee, vs.* MATTHEW M. KINNIBURGH *et al.*

DECEMBER 17, 1936

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

118

Moss, J. This case was begun in the Superior Court by a bill in equity which was filed by a trustee against his *cestuis que trust* and in which he prayed that his account as trustee, annexed to the bill, might be settled; that provision might be made for the payment of any sums of money thus found to be due to him or to the respondents, and that the trust might be terminated. After answer and replication had been filed the case was referred to a special master, by whom it was heard on oral and documentary evidence. In his report he eliminated from the trustee's account, as filed, some items of commissions charged and had the interest on the credit and debit items recalculated at simple instead of compound interest, but otherwise allowed the account as filed, and found the amount due from the respondents to the complainant to be $4,753.83 as of December 1, 1935.

After a hearing before the Superior Court on exceptions to this report, a final decree was entered, in which all the exceptions were overruled, the report was confirmed, the respondents were ordered to pay the complainant the sum of $4,753.83 on or before April 6, 1936, and in default of such payment the master was directed to make sale, in a certain manner, of the real property constituting the trust estate and to pay the net proceeds of the sale to the complainant up to the aforesaid sum and to pay any remaining net proceeds to the respondents. By this decree the duties of the complainant as trustee were also terminated. The case is before this court on the respondents' appeal from this decree.

The trust was created in 1919 by three conveyances by the respondents to the complainant as trustee for them, respectively, of three parcels of real estate, owned by them respectively, with three tenement houses on them. A tenement in one of the houses was occupied by the respondents for about seven years and then a bungalow was built on one of the lots and has been occupied by them ever since. The properties conveyed were valued at about $9,880, but were subject to mortgages aggregating $6,235. The respondents also executed a fourth instrument by which it was agreed that the complainant might make one entire fund of the income from the separate properties, and this he did.

The complainant was an experienced real estate man and by the terms of the trust he was to have the property kept in repair, collect the rents therefrom, pay the taxes thereon, borrow money for the purposes of the trust by mortgaging any of the property, and otherwise to manage the property, paying any net receipts therefrom to the respondents.

The last two paragraphs in each of the deeds of trust were as follows: "(5th) In case the income from said property at any time or the proceeds of any mortgage, shall exceed the amount that said Trustee may have expended on said property, plus any other or additional amount which the said Trustee may have advanced to me in the way of a loan, or for which I may be in any way indebted to him, then any balance above such amounts shall be paid over to me from time to time by said Trustee. (6th) Whenever all indebtedness that I may owe to said Trustee, whether arising from this transaction or from any other source or cause, shall have been paid in full, then said Trustee shall re-convey to me said premises, subject to such encumbrances as may then be outstanding upon the same, and said trust shall thereupon terminate and cease."

It is obvious from the language of the above paragraphs that the making of advances by the trustee for expenditures on the property and the making of loans by him to the respondents were contemplated by the parties; and during

the continuance of the trust many advances were made from time to time by the trustee, for the benefit of the respondents, for repairs to the trust properties and for taxes and various purposes; and many loans were made by him to them from time to time also for living expenses. The net income from the trust property was not sufficient for their support and they had very little, if any, other means of support. They were also allowed for many years to occupy one of the tenements rent free. He rendered to them a full account of his trusteeship, at first every six months and at least every year after that. From April, 1919, to December 31, 1921, the trustee charged interest at the rate of six per cent. per annum on the advances and loans made by him and from the latter date to the termination of the trust at the rate of eight per cent. per annum, in both cases compounded.

The grounds upon which the respondents have contended before us that their appeal should be sustained are that the complainant was not entitled to charge any interest on the moneys advanced by him for the purposes of the trust or loaned by him to the respondents during the period; that if any interest should be allowed for such moneys, it should be only at a much lower rate than was allowed by the master; and that interest at the rate of eight per cent. per annum paid on the so-called Flagg mortgage for $1,500 on a part of the trust property was improperly allowed.

As to the first of these grounds, it is obvious, as above stated, from the terms of the trust deeds that advances and loans by the trustee for the benefit of the trust estate and the respondents were contemplated by the parties, when the trust was created. Indeed the transaction was a sort of a cross between an ordinary trust for the benefit of the cestuis and a mortgage to provide security for future advances and loans, to be made by the trustee in reliance on such security, the complainant being thus in the dual position of trustee and mortgagee. Therefore, in our opinion, he is entitled to interest, at a proper rate, on the balances

due him from time to time for such advances and loans above amounts received by him, unless he has forfeited that right by improper conduct on his part as trustee.

The respondents' counsel stated before us that he did not claim any fraud or breach of trust by the complainant, yet he contended that the complainant's conduct as trustee was such that he should not be allowed any interest. In support of this contention the counsel specified the facts that for some advances and loans he charged commissions in his accounts; that he charged compound interest in such accounts; that he mingled the trust funds with his own; and that he did not sell the trust property, when he found that the net equity of redemption therein was being exhausted by the increasing amount due to him for advances and loans.

The master and the Superior Court have both found that the complainant was not entitled to the commissions, except one that was expressly agreed to by the respondents, and that he was not entitled to compound interest; and the complainant did not except to or appeal from these findings. In view of the fact that the respondents do not claim any fraud or breach of trust by the complainant and no bad faith on his part is shown by any evidence and in view of the facts that by the transaction between them he was a prospective creditor of the respondents, as well as a trustee, and made loans to them at their special request; that charges for commissions by those who advance money on the security of second mortgages are not unusual and the charging of interest at the rate of eight per cent. per annum is usual; that the charging of such commissions and the rate and compounding of interest were shown by the complainant in his accounts rendered to the respondents and not objected to by them, we do not find that his conduct as to charging commissions and compound interest at the rate of eight per cent. per annum was any reason for not allowing him simple interest at a fair rate.

We do not find that he should be penalized on the ground that he did not keep the trust funds separate from his own, in view of the fact that apparently there was always, during the continuance of the trust, money due him from the respondents in excess of any trust funds in his hands. Nor do we find any evidence to justify a ruling that the respondents have any right to complain against him because he did not sell the properties to reimburse himself for his advances and loans. With regard to all these matters, it is worthy of comment that we have not been furnished with any transcript of testimony and must depend, for the facts, upon the exhibits filed, statements of fact in the master's report and admissions of counsel.

As to the respondents' contention that interest at the rate of eight per cent. per annum should not have been allowed to the complainant, there are several pertinent considerations. On the one hand, the security which he had for the repayment of the advances and loans on which interest at that rate was allowed was only equivalent to that of a second mortgage, in which that is the usual rate. He was not obliged to advance or loan the money involved and he apparently made it clear, in the semi-annual and annual statements of accounts which he rendered to the respondents, who were of full age and apparently fully competent, that he was charging interest at that rate and they not only did not protest against that rate, until recently, but continued to ask for further loans. On the other hand, it is provided in General Laws 1923, Chap. 228, Sec. 6, that in all business transactions, where interest is secured or paid, the interest shall be computed at the rate of six per cent. per annum, "unless a different rate is expressly stipulated." In the instant case there is no claim that any rate of interest was expressly stipulated. Therefore we are of the opinion that interest should be calculated at the statutory rate on all advances and loans by the complainant and on all sums credited to the respondents.

The Flagg mortgage was made February 26, 1920, by the complainant, as trustee, to Mary H. W. Flagg, his daughter, as security for a note from him to her for $1,500 and bearing interest at eight per cent. per annum, and covered a part of the trust property that was subject to a prior mortgage for $3,000, dated the same day. The $1,500 went into the trust funds and is included in the account. On May 23, 1922, the mortgagee transferred this Flagg note and mortgage to Willis H. White & Sons Co., which was a corporation organized April 1, 1922, with the complainant holding most of the stock; and the consideration for the transfer was shares of the stock of this corporation. The note was paid by the trustee and the mortgage was discharged July 13, 1927, the amount being charged to the respondents on the complainant's account. The facts about this mortgage, so far as they affected the respondents, appeared upon the accounts rendered to them and no objection seems to have been made by them. The master and the Superior Court found nothing improper about this transaction nor is there anything to show that the respondents suffered any harm therefrom. We see no reason for disallowing any of the items in the complainant's account for the payments of interest on this mortgage and in discharge of the principal.

During the pendency of the appeal in this court the respondents filed a petition in this court for an injunction against a sale of the real property by the master, in accordance with the decree appealed from, in order to pay to the complainant the amount found by the decree to be due to him; and there has been a hearing on this petition. In view of our conclusions, above stated, on the merits of the appeal, and in view of the fact that, as we are informed, no sale has yet been made, we see no good reason for acting upon the petition at this time. The matter of the time for a sale of the trust property can be covered by the new decree to be entered in the Superior Court.

The respondents' appeal is sustained and the decree appealed from must be modified so as to conform with this opinion.

On December 28, 1936, the parties may present to us, to be entered in the Superior Court, a form of decree in accordance with this opinion.